UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Kenneth D. Dippel, | ) | Civil Action No.: 4:16-cv-01605-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| South Carolina Farm Bureau | ) | |
| Mutual Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Kenneth D. Dippel brings this action against Defendant South Carolina Farm Bureau Mutual Insurance Company seeking payment under his Standard Flood Insurance Policy. The matter is before the Court for consideration of Plaintiff's objections to the Report and Recommendation ("R & R") of United States Magistrate Judge Thomas E. Rogers, III, who recommends denying Plaintiff's motion for summary judgment.[1] *See* ECF Nos. 279 & 282.

## Legal Standards

### I.   Review of the R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept,

---

[1]   The Magistrate Judge issued the R & R in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). The Court is mindful of its duty to liberally construe Plaintiff's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed *pro se* is to be liberally construed" (internal quotation marks omitted)). *But see United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("Although courts must liberally construe the claims of *pro se* litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate." (internal citations, quotation marks, ellipsis, and brackets omitted)). The Court decides Plaintiff's motion for summary judgment without a hearing pursuant to Local Civil Rule 7.08 (D.S.C.).

reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II.     Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### **Background**[2]

Plaintiff purchased a Standard Flood Insurance Policy ("the Policy") issued by Defendant that insured his home in Loris, South Carolina. The Policy provided $250,000 in building coverage and

---

[2] The Court very briefly summarizes the facts here. A full summary with dates and citations to the record is contained in the instant R & R and the prior R & R located at ECF No. 214.

$100,000 in contents coverage and included a $1,250 deductible.[3]

After heavy rainfall in late September and early October 2015 (often referred to in this area as the 1,000-year historic flood), Plaintiff submitted a flood damage claim to Defendant, which retained Pelican State Adjusting, Inc. (adjuster John Munnerlyn) and Donan Engineering (engineer Christopher Scallion) to inspect Plaintiff's house. Munnerlyn ultimately concluded there was no covered ***structural*** damage and recommended Defendant pay Plaintiff $10,276.26 for various ***non-structural*** damages. Plaintiff disagreed, so he retained Venture Engineering (engineer Steve Powell) and Martinez & Associates Structural Engineers (engineer Saul Martinez) to inspect his house. Plaintiff ultimately submitted an amended proof of loss claiming $200,746.25 for ***structural and non-structural*** damages. FEMA rejected Plaintiff's appeal and agreed with Defendant's decision not to make any additional payment.[4] This lawsuit followed.

## **Discussion**

As the Magistrate Judge explains, the Court previously granted summary judgment for Defendant regarding Plaintiff's claims for ***structural*** damages,[5] and the only remaining issues are

---

[3] Plaintiff purchased flood insurance through the National Flood Insurance Program ("NFIP"). Under the NFIP, which was created by the National Flood Insurance Act of 1968 (42 U.S.C. § 4001) and is administered by the Federal Emergency Management Agency ("FEMA"), flood insurance is sold to qualified applicants either directly by FEMA or by private insurance companies known as "write-your-own" companies, such as Defendant, who act as the U.S. government's agents pursuant to federal regulation. *See generally Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 631–32 (4th Cir. 2017), and *Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 243–44 (4th Cir. 2007) (thoroughly summarizing the NFIP).

[4] FEMA did request that Defendant retain another engineering firm to perform an additional inspection of Plaintiff's property. ECF No. 105-5 at p. 1. Defendant retained Forensic Consulting Group, LLC, but Plaintiff disallowed the inspection.

[5] The Court concluded the Policy's earth movement exclusion barred coverage for Plaintiff's ***structural*** damage claims. *See* ECF No. 237 at pp. 5–8. As a general matter, "[c]ourts have long held that federal flood insurance policies do not cover losses stemming from water-caused earth movements." *Yaniz v. Wright Nat'l Flood Ins. Co.*, __ F. Supp. 3d __, __, 2020 WL 1038779, at *12 (S.D. Fla. Mar. 4, 2020) (internal quotation marks omitted). The Fourth Circuit has recognized the four primary cases involving the earth movement exclusion in the context of a Standard Flood Insurance Policy ("SFIP"). *See Smoak v. Indep. Fire Ins. Co.*, 180 F.3d 172, 175 (4th

Plaintiff's claims for ***non-structural*** damages. Plaintiff has filed a motion for summary judgment regarding the non-structural damages, *see* ECF No. 178, which the Magistrate Judge recommends denying. *See* R & R [ECF No. 279]. Plaintiff has filed objections to the R & R,[6] and Defendant has

---

Cir. 1999) (citing *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *Sodowski v. NFIP*, 834 F.2d 653 (7th Cir. 1987), *Wagner v. Director, FEMA*, 847 F.2d 515 (9th Cir. 1988), and *Quesada v. Director, FEMA*, 753 F.2d 1011 (11th Cir. 1985))). *See generally Plywood Prop. Assocs. v. NFIP*, 928 F. Supp. 500, 505 (D.N.J. 1996) ("[T]he majority of Circuits that have considered this precise issue have held that damages resulting from earth movement not caused by a mudslide or erosion are not covered by the SFIP, even if the earth movement would not have occurred but for the flood." (distinguishing *Quesada*)).

In the instant Policy, the earth movement exclusion includes (among other items) "land subsidence," "destabilization or movement of land that results from accumulation of water in subsurface land area," and "gradual erosion." Policy [ECF Nos. 104-4, 177 at pp. 23–71, & 178-2 at pp. 4–52] at p. 23. However, the exclusion contains exceptions for (1) mudflow and **(2)** "land subsidence as a result of erosion," defined as "[c]ollapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood." *Id.* (referring to definitions of mudflow and land subsidence found at *id.* pp. 2, 5). The latter exception for land subsidence is a "*narrow* . . . exception to the earth movement exclusion." *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 808 n.2 (3d Cir. 2005) (emphasis added).

In his complaint, Plaintiff *acknowledged* the earth movement exclusion *but* alleged he fell within the land subsidence exception. *See* ECF No. 1 at ¶¶ 8–14. Specifically, Plaintiff alleged that his "residence is situated near a tidal creek that overflowed and flooded his property," that his "home experienced 'land subsidence as a result of erosion' as contemplated by the savings clause in Exclusion C [the earth movement exclusion]" and that "flood waters caused structural damage to the foundation of his home as a result of the . . . land subsidence." *Id.* at ¶¶ 8, 13–14. To support these allegations, Plaintiff relied on the opinions of Powell and Martinez, who observed structural problems (including foundation settling) resulting from prolonged water saturation of the soil under and around Plaintiff's house. *See* ECF Nos. 104-37, 112-5, 112-6, 177-1 at pp. 23–25, 27–31, & 178-3 at pp. 3–11. Plaintiff asserted this flood damage was attributable to the collapse or erosion of the tidal creek located 225 feet/75 yards from his property. ECF No. 177 at pp. 1–2, 4, 13–15. The Court found the latter exception invoked by Plaintiff did not apply because (1) he did not point to any admissible evidence showing collapse or subsidence of land along the creek caused flood waters to reach his home, (2) his property was not "along the shore" of the creek because there was a street and another house in between the creek and his property, and (3) the unnamed creek is not a "lake or similar body of water." ECF No. 237 at p. 7 (adopting ECF No. 214 at pp. 19–20 and citing the burden of proof articulated in *Chesapeake Ship Propeller Co. v. Stickney*, 820 F. Supp. 995, 999 (E.D. Va. 1993)); *see Yaniz*, 2020 WL 1038779, at *12–13 (discussing the earth movement exclusion and explaining that "[t]o demonstrate that flood-related erosion occurred, [a p]laintiff[] must demonstrate: (1) collapse or subsidence of land, (2) the land is along the shore of a lake or similar body of water, (3) the collapse or subsidence resulted from erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels, and (4) the waves or currents resulted in a flood" (internal quotation marks omitted)). Accordingly, the Court concluded the earth movement exclusion applied.

[6]     To the extent Plaintiff's objections (and his motion filed at ECF No. 246) challenge the Court's prior ruling regarding ***structural*** damages, the Court reaffirms its prior ruling regarding the earth movement exception, as fully discussed in Footnote Five above. Plaintiff has not established a basis under Fed. R. Civ. P. 54(b) for the Court to revise its prior order granting summary judgment for Defendant as to the alleged ***structural*** damages. *See generally U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (recognizing a court may revise an interlocutory order if there is "(1) . . . substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice"). Again, the instant R & R only concerns Plaintiff's ***non-structural***

responded to Plaintiff's objections.[7]  *See* ECF Nos. 282 & 288.

Plaintiff's first two objections concern the Magistrate Judge's discussion of the reports prepared by John Munnerlyn of Pelican State Adjusting, Inc. and Christopher Scallion of Donan Engineering. *See* Pl.'s Objs. [ECF No. 282] at pp. 12–14.  He argues both reports are "not reliable evidence" and are deficient in various respects.  *Id.* at pp. 12–13.  His objections deal more with the weight or *credibility* of said reports, which are more properly challenged by cross-examination.  Plaintiff has not shown the reports are inadmissible such that they cannot be considered at the summary judgment stage.  Moreover, the summary judgment standard requires the Magistrate Judge and the Court to view the evidence in the light most favorable to Defendant—here, the non-moving party—without weighing the evidence or making credibility determinations.  *See Reyazuddin* & *Jacobs*, *supra*; *see also TFWS, Inc. v. Schaefer*, 325 F.3d 234, 241 (4th Cir. 2003) ("[A] district court may not resolve conflicts in the evidence on summary judgment motions.").

Plaintiff's remaining objections relate to the Magistrate Judge's discussion of the various categories of claimed non-structural damages (i.e., those unrelated to destabilization or earth movement), namely **(1)** moisture damage, **(2)** mold, **(3)** damage to Plaintiff's ductwork and HVAC unit, **(4)** damage to his drainage line, **(5)** termite treatment, **(6)** debris removal, and **(7)** power washing the exterior of his dwelling.  *See* Pl.'s Objs. [ECF No. 282] at pp. 14–20.

Regarding Plaintiff's objections concerning **moisture damage**, **damage to his ductwork and HVAC unit**, **damage to his drainage lines**, and **power washing the exterior of his dwelling**

---

damages.

[7]     Defendant asserts the Court should dismiss Plaintiff's objections as non-specific and meritless or, alternatively, affirm the R & R "in all aspects."  ECF No. 288 at p. 14.

(categories **(1)**, **(3)**, **(4)**, and **(7)** above), *see id.* at pp. 14–17, 19–20, the Court agrees with the Magistrate Judge that summary judgment is inappropriate due to conflicting evidence in the record regarding the damages sustained. *See* R & R at pp. 6–7, 9–12. The Magistrate Judge thoroughly summarizes the conflicting evidence in the record, *see id.*, and the Court adopts that summary without repeating it here.

Regarding Plaintiff's objection concerning **mold**, *see* Pl.'s Objs. at pp. 16–17, the Magistrate Judge correctly notes the Policy excludes coverage for "mildew[] or mold damage that results primarily from any condition . . . [t]hat is within your control, including but not limited to . . . failure to inspect and maintain the property after a flood recedes." R & R at p. 8 (quoting Policy at p. 23). There is a question of fact as to whether Plaintiff inspected and maintained his property—including mold remediation—after his prior flood loss in 2013.[8] Accordingly, summary judgment for Plaintiff is improper as to mold.

Regarding **termite treatment**, Plaintiff disagrees with the Magistrate Judge's reliance on *Davis v. Nationwide Mutual Fire Insurance Co.*, 811 F. Supp. 2d 1240 (E.D. Va. 2011), and asserts this case is "factually distinguishable" because his dwelling differs from the one in *Davis*. *See* Pl.'s Objs. at pp. 18–19. However, the Magistrate Judge did not rely on *Davis* due to the type of dwelling involved; rather, the Magistrate Judge noted *Davis* generally recognizes that "[t]ermite treatment itself *is a service, not an item of property*." R & R at pp. 8–9 (emphasis added) (quoting *Davis*, 811 F. Supp. 2d at 1256). Consequently, the Policy does not provide coverage for termite treatment, at least "[i]n the absence of any evidence of direct physical damage to previously treated building property by or from flood such that retreatment of the insured property is necessary." *Davis*, 811 F. Supp. 2d at 1256–57. Plaintiff has not produced evidence showing he had a prior termite bond/treatment, and therefore the

---

[8]     *See generally* ECF No. 104-12 (claim file for 2013 flood loss claim).

Policy does not cover this claim. Accordingly, summary judgment for Plaintiff is improper as to termite treatment.

Regarding **debris removal**, Plaintiff contends a "dumpster rental is needed to dispose of all the flood damaged flooring, floor covering, etc." Pl.'s Objs. at p. 20. He has provided a quote for a dumpster rental costing $897.93, *see* ECF No. 178-3 at p. 32, and while the Policy covers debris removal, *see* Policy at p. 12, he has *not* presented evidence of debris on his property that actually needed to be removed. Rather, it appears Plaintiff believes a dumpster would be necessary if his allegedly damaged flooring/floor covering is removed from his house. Accordingly, summary judgment for Plaintiff is improper as to debris removal.

## Conclusion

The Court finds summary judgment is inappropriate as to Plaintiff's claimed non-structural damages. The Court **OVERRULES** his objections, **ADOPTS** the Magistrate Judge's R & R [ECF No. 279], and **DENIES** Plaintiff's motion for summary judgment [ECF No. 178].

The Court **WAIVES** the mediation requirement that was previously ordered. The Court will conduct a bench trial regarding Plaintiff's claimed non-structural damages.[9] The Clerk will enter a scheduling notice for the bench trial.

**IT IS SO ORDERED.**

Florence, South Carolinas/ R. Bryan Harwell
July 24, 2020R. Bryan Harwell
Chief United States District Judge

---

[9] Again, the categories of claimed non-structural damages are (1) moisture damage, (2) mold, (3) damage to Plaintiff's ductwork and HVAC unit, (4) damage to his drainage lines, (5) termite issues, (6) debris removal, and (7) power washing of the exterior of his property.